**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:  4:19-cr-00233 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| EDWARD LIGHTNING, | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| Defendant. | ) | |

**I. INTRODUCTION**

On October 8, 2019, this Court conducted a sentencing hearing for Defendant Edward Lightning ("Lightning"). During the hearing, this Court imposed a sentence of 120 months incarceration to run consecutive to Lightning's state court sentence. This memorandum serves to supplement this Court's rulings during the sentencing hearing.

**II. SENTENCING PROCESS**

Often, criminal sentencing is described as a three-step process. The first step is calculating the advisory sentence guideline range suggested by the United States Sentencing Commission. *See Rita v. United States*, 551 U.S. 338, 351 (2007) ("The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines."). In so doing, a court must determine the offense level for the crimes for which the defendant has been convicted and determine the defendant's criminal history category. *See United States v. Boyd*, No. 3:07-CR-3, 2008 U.S. Dist. LEXIS 94565, at *43-48 (E.D. Tenn. Nov. 18, 2008).

Second, the court must determine whether a variance or departure from the advisory sentence guideline range would be appropriate. *See United States v. Collington*, 461 F.3d 805, 807-09 (6th Cir. 2006).

For the final step,

> a sentencing court must independently evaluate each of the factors in 18 U.S.C. § 3553(a), which details the considerations that a district court must weigh before sentencing a criminal defendant. Although the Guidelines form a starting point in the district court's analysis under 18 U.S.C. 3553(a), a district court may <u>not</u> presume that the sentence suggested by the Guidelines is appropriate for an individual criminal defendant. . . . A district court may "hear arguments by prosecution or defense that the Guidelines sentence should not apply." In this way, a "sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure." Ultimately, however, a court must exercise its independent judgment in sentencing a defendant.

*United States v. Stern*, 590 F. Supp. 2d 945, 949 (N.D. Ohio 2008) (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007) and citing *United States v. Ross*, 501 F.3d 851, 853 (7th Cir. 2007)).

### III. ANALYSIS

1. <u>Advisory Sentence Guideline Computation</u>

To begin the advisory sentencing guideline computation, this Court determines the offense level for the crimes for which the defendant has been presently convicted. On June 27, 2019, Lightning pled guilty to the charge of Felon in Possession of Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). Pursuant to § 2K2.1(a)(6)(A) of the sentencing guidelines, the base offense level for Lightning's crime is 14. This Court granted a two-level reduction pursuant to § 3E1.1(a) of the sentencing guidelines for acceptance of responsibility, making Lightning's offense level 12.

With respect to Lightning's criminal history category, this Court found Lightning's criminal history category to be VI. The criminal history pertinent to this calculation were: (1) Case No.: 2008 CR 256 - Escape on February 14, 2008 in the Trumbull County Court of Common Pleas,

sentenced to 4 years custody; (2) Case No.: 4:12CR00324 - Felon in Possession of Firearm and Ammunition on April 30, 2012 in the Northern District of Ohio, sentenced to 55 months custody concurrent with Case No. 4:13CR00200; (3) Case No.: 4:13CR00200 - Felon in Possession of Firearm on August 15, 2012 in the Northern District of Ohio, sentenced to 55 months custody concurrent with Case No.4:12CR00324; (4) Case No.: 2018CR962 – Failure to Comply with Order or Signal of Police Officer and Having Weapon While Under Disability on September 21, 2018 in the Mahoning County Court of Common Pleas, sentenced to 24 months custody.

For each of these convictions, because the sentence of imprisonment was greater than one year and one month, 3 points were tallied, pursuant to § 4A1.1(a) of the sentencing guidelines, for a total of 12 points. In addition, 2 additional points were added pursuant to § 4A1.1(d) of the sentencing guidelines because the instant offense was committed while on supervised release for Case Nos.: 4:12CR00324 and 4:13CR00200. Therefore, the total criminal history score is 14, establishing a criminal history category of VI for Lightning pursuant to the sentencing table in Chapter 5, Part A of the sentencing guidelines.

Following the sentencing table, with an offense level of 12 and a criminal history category of VI, this Court determined the advisory sentence guideline range to be 30-37 months imprisonment.

2. <u>Variance Analysis</u>

Prior to the October 8, 2019 sentencing hearing for Lightning, this Court gave notice to the parties of a possible upward variance. In determining whether an upward variance from the advisory sentence guideline range was appropriate in this case, this Court considered the following.

As set forth in the Presentence Investigation Report ("PSR"):

> On September 21, 2018, Youngstown Police Officers were patrolling the area of Shehy Street and Wilson Avenue in Youngstown, Ohio. Officers observed a vehicle make a traffic violation regarding the appropriate use of a turn signal. Officers initiated their emergency lights and sirens to conduct a traffic stop. After initially

stopping, the driver of the vehicle, later identified as Edward Lightning, performed a U-turn and fled from the traffic stop. The officer pursued the fleeing vehicle. The vehicle traveled at high rates of speeds. Lightning lost control of the vehicle in a field on South Garland Avenue.

Lightning then fled on foot from the vehicle. The officer continued his pursuit of [Lightning] in his vehicle. As the officer got closer to [Lightning] he exited his vehicle, and the cruiser door struck Lightning, knocking him to the ground. Lightning got up and continued to flee. The officer eventually caught up to Lightning, placed him on the ground, and proceeded to handcuff him.

Lightning informed the officer that he had "fake dope" in his possession and that he was on Federal Probation for a prior gun charge. An additional officer arrived on the scene and discovered a firearm in the field where Lightning fled. The firearm was in the location of where Lightning had been knocked to the ground.

A check of the firearm via Youngstown Police Department Index discovered that the Smith and Wesson MP9 Shield, serial number HWL0459, was entered as stolen out of Columbiana County, Ohio. Also, discovered on Lightning during booking was a fake $100.00 bill.

Lightning had been a fugitive from justice with federal probation warrants and state warrants for failing to appear on firearm charges. Agents received information that Lightning was staying at 362 Falls Avenue, Youngstown, Ohio. On December 11, 2018, the United States Marshall Service [("USMS")] and local law enforcement secured the perimeter of the house and knocked on the door. USMS heard male and female voices in the home. A female answered the door, and officers were informed that Lightning was upstairs. The home was cleared for safety reasons, and a K9 unit was brought in to search the home. [Lightning] was subsequently located in an attic.

A consensual search of the home was conducted. During the search officers found seventeen counterfeit $100 bills, and a Smith and Wesson M&P9 Shield, 9mm caliber pistol bearing serial number HAW7394. The firearm was loaded with 8 rounds of ammunition.

Prior to Lightning's possession of the firearm and ammunition, each had traveled in and affected interstate commerce.

(PSR ¶¶ 11-17, ECF No. 19.)

In addition to this information regarding Lightning's instant offense, and the circumstances leading to Lightning's instant offense, this Court notes that Lightning has had firearm related offenses since 1998. Lightning's first firearm related offense occurred in 1998, when he was just 14 years old – he was charged with Improperly Handling a Firearm in a Motor Vehicle. (*Id.* at ¶ 35.) In 2001, at 18 years old, Lightning was charged with Carrying a Concealed Weapon, for which

he was sentenced to one year of community control. (*Id.* at ¶ 41.) Less than one year later, in 2002, Lightning was charged with Burglary with Firearm Specification, for which he was sentenced to five years custody. (*Id.* at ¶ 44.) While serving his sentence, in 2008, Lighting was charged with Escape, for which he was sentenced to four years custody. (*Id.* at ¶ 45.) He completed his sentence and was released from custody into post release control on March 22, 2012. (*Id.*)

A mere 39 days later, on April 30, 2012, Lighting was charged with Felon in Possession of a Firearm and Ammunition. (*Id.* at ¶ 46.) Less than four months after that, on August 15, 2012, Lightning was charged with Felon in Possession of a Firearm. (*Id.* at ¶ 47.) Lightning appeared before this Court for these two charges and, on September 13, 2013, was sentenced to 55 months custody for each charge, to run concurrently. (*Id.* at ¶¶ 46-47.) Lightning began his supervised release for these charges on January 13, 2017. (*Id.*) On August 2, 2017, this Court sentenced Lightning to 12 months custody for a supervised release violation. (*Id.*)

Shortly after his most recent release from custody, Lighting again engaged in criminal conduct involving a firearm. On September 21, 2018, as detailed above, Lightning was charged with Failure to Comply with an Order or Signal of a Police Officer and Having a Weapon While Under Disability in Mahoning County. (*Id.* at ¶ 48.) This conduct was in violation of Lightning's supervised release for the two cases previously before this Court. While executing a warrant for Lightning's arrest due to this supervised released violation, the United States Marshall Service found Lightning in possession of yet another firearm and ammunition. (*Id.* at ¶¶ 15-16.) This most recent act of possession, on December 11, 2018, is the charge under which Lighting was before this Court for sentencing.[1]

---

[1] A full description of Lightning's criminal history, as set forth in the PSR, is attached as Exhibit A.

Given this detailed framework, it is clear to this Court that Lightning refuses to stop possessing firearms and ammunition. In addition, and as analyzed further herein, while illegally possessing firearms, Lightning also engages in dangerous and further illegal conduct. Given his extensive history with firearm possession and the conduct he engages in while possessing said firearms, this Court finds that an upward variance to the statutory maximum 120 months is the only sentence that is sufficient, but not greater than necessary for Lightning.

3. 18 U.S.C. § 3553(a) Factors

   a) **Nature and Circumstances of the Offense and the History and Characteristics of Lightning**

When determining which sentence is sufficient, but not greater than necessary, pursuant to 18 U.S.C. § 3553(a)(1), this Court must consider the nature and circumstances of the instant offense along with the history and characteristics of Lightning. While the specific details of Lightning's instant offense and Lightning's history with firearms and ammunition are laid out in detail in the previous section, this Court notes that Lightning is not simply an individual who refuses to stop possessing firearms and ammunition. Lightning is an individual who, while possessing firearms, engages in dangerous and unlawful conduct.

Specifically, the offense conduct currently at issue is not just possessing a firearm. It also necessarily includes Lightning's attempt to evade justice resulting in warrants issued for his arrest, and counterfeit money, all of which put Lightning, law enforcement, and the general public at risk. Not to mention, Lightning engaged in this unlawful activity knowing that he was under supervised release for a prior charge involving a firearm.

It is clear from Lightning's history and characteristics, that not only does he refuse to stop possessing firearms, he also refuses to stop engaging in other unlawful activity. For instance, in 2001, law enforcement officers observed Lightning fire two shots from a handgun into the air and

then conceal the weapon in his waistband. (PSR ¶ 41, ECF No. 19.) In 2002, Lightning was apprehended trying to exit a bedroom window during a burglary in which 3 bricks of marijuana were located. (*Id.* at ¶ 44.) After his release from custody for that offense, he fled while under post release control. (*Id.* at ¶ 45.)

On March 22, 2012, Lighting was again released to post release control and then, little more than one month later, on April 30, 2012, Lightning was again apprehended with a firearm in his waistband during a routine traffic stop. (*Id.* at ¶ 46.) Not only did Lightning possess the firearm, loaded with ammunition, but 7 grams of cocaine were found in Lightning's sock. (*Id.*) Thereafter, on August 15, 2012, Lightning negotiated the sale of firearms and ammunition to undercover ATF agents, during which time Lightning showed the ATF agents a weapon he had on his person claiming "This is my baby . . . I doubt I'll ever sell this!" (*Id.* at ¶ 47.) On July 7, 2017, while Lightning was under supervised release, Lightning violated his supervised release by walking away from the Cleveland Oriana house, allegedly while in possession of synthetic marijuana. (*Id.* at 46-47.) Finally, on September 21, 2018, Lightning attempted to flee a lawful traffic stop, had counterfeit money, fake drugs, and another firearm in his possession. (*Id.* at ¶ 48.)

Given the conduct of the underlying offense, coupled with Lightning's criminal history, it is clear to this Court that Lightning is undeterred from not only possessing firearms but possessing firearms while under court supervision, firing the firearms he possesses, possessing drugs along with firearms, possessing counterfeit money along with firearms, and fleeing from law enforcement while possessing firearms. It is clear that Lightning will not stop engaging in unlawful behavior that puts himself and the general public at risk.

**b) Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and to Protect the Public**

This Court finds that Lightning's pattern of unlawful behavior involving firearms, drugs, and counterfeit money over the past twenty years, his inability to be deterred from possessing firearms or engaging in unlawful behavior, and the likelihood of recidivism given his willingness to engage in unlawful behavior even while on supervised release, reflect the need for the sentence imposed. Furthermore, the statutory maximum sentence reflects the seriousness of the offense, as this is Lightning's seventh firearm related offense since 1998 and he was hiding from law enforcement with the firearm at the time of this offense. This sentence also promotes respect for the law, provides just punishment, protects the public, and affords adequate deterrence all while avoiding an unwarranted sentencing disparity as previous sentences for lesser amounts of time clearly have not impressed upon Lightning the seriousness of his unlawful activity and the consequences it espouses. The fact remains, since 2001, Lightning has spent little time without a pending criminal charge or without serving a sentence. Lightning is undeterred from engaging in criminal conduct that puts himself and the public in danger.

Finally, pursuant to 18 U.S.C. 3553(a)(6), this Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" when considering the sentence to be imposed. As stated in the PSR, according to the United States Sentencing Commission data compilations, the national average sentence for defendants with offenses under § 2K2.1 of the sentencing guidelines with criminal history category of VI is 77 months. The Court varied up from both the advisory sentence guideline range and the national average to sentence Lightning to the 120-month statutory maximum sentence available pursuant to 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2).

Understanding, of course, that "[f]or a sentence to the substantively reasonable, it must be proportionate to the seriousness of the circumstances of the offense and the offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell,* 516 F.3d 503, 512 (6th Cir. 2008) (quoting *United States v. Smith*, 505 F.3d 463, 470 (6th Cir. 2007)) (internal quotation marks omitted). A sentence is unreasonable "when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008) (citing *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005)).

When a district court imposes a sentence outside the advisory sentence guideline range specifically, the court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall v. United States*, 552 U.S. 38, 50 (2007). In that vein, "the greater the district court's variance, the more compelling the evidence must be." *United States v. Stall*, 581 F.3d 276, 281 (6th Cir. 2009).

This Court believes that the statutory maximum sentence is substantively reasonable and sufficient, but not greater than necessary, and does not create an unwarranted sentencing disparity because Lightning has set himself apart from other offenders in his criminal category. He has done so by continuing to possess firearms and engage in other unlawful activity, putting himself and the public at risk, despite serving multiple sentences for the same or similar offenses. It is this Court's belief that Lightning needs to be deterred and the public needs protected, and a sentence within the advisory sentence guideline range will not accomplish these directives. The Court feels this is particularly true since Lightning had previously been sentenced to 55 months custody by this Court for firearm offenses, a sentence higher than the 30-37 month guideline range for the current

offense, which very clearly had no deterrent effect because Lightning was again caught possessing firearms and engaging in other unlawful activity.

IV. **CONCLUSION**

Therefore, for all of the reasons enumerated throughout this memorandum and those stated on the record during Lightning's sentencing hearing, this Court imposed a total sentence of 120 months incarceration. All other terms and conditions of Lightning's sentence were stated on the record and will not be reiterated herein.

IT IS SO ORDERED.

DATE: November 4, 2019

/s/ John R. Adams
Judge John R. Adams
UNITED STATES DISTRICT COURT